IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIC D. BOUGH

       Petitioner,               No. CIV S-08-1627 GGH P

   vs.

M.C. KRAMER, et al.,

       Respondents.       <u>ORDER</u>

_____/

I. <u>Introduction</u>

       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2004 conviction for second degree robbery (Cal. Penal Code § 211), second degree burglary (Cal. Penal Code § 459), assault with a firearm ( Cal. Penal Code § 245(a)(2)) and misdemeanor destruction of evidence (Cal. Penal Code § 135).  Petitioner also challenges the jury's findings that he personally used a firearm in the commission of the robbery (Cal. Penal Code § 12022.53(b)), burglary (Cal. Penal Code § 12022.5(a)(1)) and assault (Cal. Penal Code § 12022.5(a), (d)).

       Petitioner was sentenced to 13 years in prison for the robbery, consisting of the middle term of three years plus an additional ten years for the firearm enhancement.  Sentences on the other felony counts were stayed pursuant to Cal. Penal Code § 654.

1    This action is proceeding on the original petition filed July 15, 2008.  Petitioner

2  raises the following claims: 1) jury instruction error (claim one); 2) ineffective assistance of trial

3  counsel (claims 2-6); 3) insufficient evidence (claim 7); 4) ineffective assistance of appellate

4  counsel (claims 8-13).

5    After carefully considering the record, the court orders that the petition is denied.

6  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

7    The AEDPA "worked substantial changes to the law of habeas corpus,"

8  establishing more deferential standards of review to be used by a federal habeas court in

9  assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

10  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

11    In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

12  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

13  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

14  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

15  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

16  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

17  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

18  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

19    "Unreasonable application" of established law, on the other hand, applies to

20  mixed questions of law and fact, that is, the application of law to fact where there are no factually

21  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

22  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

23  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

24  deference is not blindly automatic, "the most important point is that an *unreasonable* application

25  of federal law is different from an incorrect application of law....[A] federal habeas court may not

26  issue the writ simply because that court concludes in its independent judgment that the relevant

1  state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

2  that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

3  1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the

4  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

5  authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

6          The state courts need not have cited to federal authority, or even have indicated

7  awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

8  Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is

9  contrary to, or an unreasonable application of, established Supreme Court authority. Id. An

10 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

11 occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the

12 established Supreme Court authority reviewed must be a pronouncement on constitutional

13 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

14 binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

15         However, where the state courts have not addressed the constitutional issue in

16 dispute in any reasoned opinion, the federal court will independently review the record in

17 adjudication of that issue. "Independent review of the record is not de novo review of the

18 constitutional issue, but rather, the only method by which we can determine whether a silent state

19 court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

20 2003).

21 III. Factual Summary

22         The opinion of the California Court of Appeal contains a factual summary. After

23 carefully considering the record, the court finds the summary to be accurate and adopts it below.

24         On October 31, 2002, defendant entered Guarantee Bank on Howe Avenue in
           Sacramento wearing striped overalls and a Mighty Ducks mask. As he
25         approached one of the bank tellers, he removed a gun from his pocket. When he
           reached the teller's window, he laid the gun sideways on the counter and, with his
26         hand on the gun, asked the teller for money. [Footnote] She gave

1
2
3
[Footnote: The teller did not recall defendant's pointing the gun directly at her.  However, when she was shown a photograph taken during the robbery and asked "where the gun is and how it's pointed," she responded, "I would say in that picture it's pointed at me."]

4
5
him "fifties and hundreds" from her drawer.  When she had trouble removing a stack of "twenties" that contained a tracking device, defendant reached across the counter and took it.

6
7
8
Law enforcement officers follows the tracking device's signal to defendant's apartment on Howe Avenue.  Police found pieces of fabric that appeared to have been cut from a pair of overalls as well a cut-up Mighty Ducks mask in defendant's apartment, and a loaded and cocked .22-caliber revolver in defendant's car.

9
Respondent's Lodged Document 4, pp. 2-3.

10
IV.  Discussion

11
A.  Claim One

12
Petitioner argues that the trial court erred in failing to instruct on the lesser

13
included offense of brandishing a firearm.

14
The California Court of Appeal denied this claim for the following reasons:

15
16
17
Defendant claims "[t]he true finding to the firearm enhancement[s] ... should be reversed because the trial court failed to instruct the jury on brandishing a firearm ... as a lesser included offense of use of a firearm, in violation of [his] right to federal and state due process of law and equal protection guarantees." We disagree.

18
19
20
A lesser uncharged offense is necessarily included in a greater charged offense if either the elements of the greater offense, or the allegations in the accusatory pleading, are such that the lesser offense is necessarily committed if the greater offense is committed. ( People v. Reed (2006) 38 Cal.4th 1224, 1227; People v. Birks (1998) 19 Cal.4th 108, 117.)

21
22
23
24
25
As defendant concedes, in People v. Wolcott (1983) 34 Cal.3d 92, 101 (Wolcott), our Supreme Court held "a 'use' enhancement is not part of the accusatory pleading for the purpose of defining lesser included offenses." ( Id. at p. 96.) Defendant claims, however, that "since the decision in Apprendi v. New Jersey (2000) 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 [ ( Apprendi ) ], there is no longer any legal basis to distinguish between a substantive offense and a conduct enhancement.  Hence, the trial court's sua sponte duty to instruct on lesser included offenses extends to conduct enhancements." He is mistaken.

26
Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must

4

be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi, supra, 530 U.S. at p. 490.)  It said nothing about whether a court may consider enhancement allegations in determining whether an offense is a lesser included offense.  "A case is not authority for an issue neither raised nor considered." (People v. Wells (1996) 12 Cal .4th 979, 984, fn. 4.)  Accordingly, we remain obligated to follow Wolcott. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)

Defendant also contends the trial court's failure to consider "conduct enhancements" for the purpose of defining lesser included offenses denied him equal protection of the law.  Defendant posits that a person "who is charged solely with a substantive crime is similarly situated to a [person] who is charged with a substantive crime and an enhancement" because "[i]n each case, the state is invoking the criminal process to convict the [person] of a crime and take away his freedom."  Thus, he asserts "[a] defendant who is charged with a substantive crime and an enhancement should have the same right to instructions on lesser included offenses."  Defendant cites no authority in support of his assertion.

As the Attorney General correctly notes, the two people defendant describes are not similarly situated because the person charged with a substantive offense and an enhancement "is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense." (People v. Wims (1995) 10 Cal.4th 293, 307 ["a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense"].)

In any event, even assuming that brandishing a firearm is a lesser included offense of the firearm enhancements alleged in the information, no additional instructions were required here.  A trial court must sua sponte instruct on a lesser included offense "whenever there is substantial evidence raising a question as to whether all of the elements of the charged greater offense are present" (People v. Huggins (2006) 38 Cal.4th 175, 215 ( Huggins )), "but not when there is no evidence that the offense was less than that charged" (People v. Breverman (1998) 19 Cal.4th 142, 154 (Breverman)).  As we shall explain, there is no substantial evidence raising a question as to whether defendant personally used a firearm in the commission of the robbery, burglary, and assault.

To find defendant personally used a firearm in the commission of those offenses, the jury was required to find he displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it.  (People v. Granado (1996) 49 Cal.App.4th 317, 322, fn. 3 (Granado).)  Defendant did not fire the gun or strike the teller with it.  This fact forms the basis for defendant's assertion that because he "merely displayed the firearm" and "did not point it at anyone or discharge it," the jury could have reasonably doubted that he " 'intentionally displayed a firearm in a menacing manner' " (CALJIC No. 17.19) but concluded that he exhibited a firearm in a rude manner.  His contention lacks merit.

 "[W]hen a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the

1   jury is entitled to find a facilitative use rather than an incidental or inadvertent
    exposure." (Granado, supra, 49 Cal.App.4th at p. 325.)  Here, there was no
2   reasonable explanation for defendant's conduct other than a desire to facilitate the
    crimes.  He removed the gun from his pocket as he approached the teller, placed it
3   on the counter, and, while continuing to hold on to the gun, asked the teller for
    money.  The most obvious explanation, indeed the only apparent one, was a
4   deliberate display, intended to convey menace, for the purpose of advancing the
    commission of the offenses. (See People v. Johnson (1995) 38 Cal.App.4th 1315,
5   1321.)  Under these circumstances, no reasonable jury could have concluded
    defendant merely brandished the firearm, i.e., exhibited it in a "rude, angry or
6   threatening manner" (§ 417, subd. (a)(2)),FN4 but did not personally use it in the
    commission of the robbery, burglary, and assault. (Huggins, supra, 38 Cal.4th at p.
7   215; Breverman, supra, 19 Cal.4th at p. 154.)  Accordingly, the trial court was not
    required to instruct on any purported lesser included offenses.

8
9           FN4. Section 417, subdivision (a)(2) provides: "Every person who, except
            in self-defense, in the presence of any other person, draws or exhibits any
            firearm, whether loaded or unloaded, in a rude, angry, or threatening
10          manner, or who in any manner, unlawfully uses a firearm in any fight or
            quarrel" is guilty of brandishing a weapon.

11
12  There was no error, constitutional or otherwise, in the trial court's failure to
    instruct sua sponte on brandishing a firearm as a lesser included offense of the
    personal use of a firearm enhancement.
13

14  Respondent's Lodged Document 4, pp. 3-7.

15          At the outset, the court notes that in a non-capital case, such as the one presented

16  here, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal

17  constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor

18  v. Risley, 730 F.2d 1228, 1240 (9th Cir.1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th

19  Cir.1976) ( per curiam )). While the United States Supreme Court, in Beck v. Alabama, 447 U.S.

20  625, 638 (1980), has held that criminal defendants possess a constitutional right to have the jury

21  instructed on a lesser included offense in a capital murder case, the Beck court also expressly

22  reserved the question of whether due process mandates the application of the same right in a

23  non-capital case.  See Beck, 447 U.S. at 638, n. 7; Solis v. Garcia, 219 F.3d 922, 928 (9th

24  Cir.2000).  Thus, in a non-capital case, the failure of a trial court to sua sponte instruct on a lesser

25  included offense does not present a federal constitutional question that would warrant habeas

26  corpus relief.  Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.1998).

1        The Ninth Circuit in <u>Solis</u> noted that there might exist an exception to this general

2    rule for adequate jury instructions on a defendant's theory of defense.  <u>Solis</u>, 219 F.3d at 929

3    (citing <u>Bashor</u>, 730 F.2d at 1240, but noting that <u>Windham</u>, 163 F.3d at 1106, mentioned no such

4    exception to the general rule).  Assuming that petitioner has a federal constitutional right to

5    receive adequate instructions on his theory of the case if it involved a lesser included offense, the

6    state appellate court's conclusion that he was not entitled to such an instruction because a "use"

7    enhancement is not part of the accusatory pleading for the purpose of defining lesser included

8    offenses was not objectively unreasonable.

9        Accordingly, for the reasons discussed above, after giving AEDPA deference, the

10   court denies this claim.

11       B.  <u>Claims 2-6</u>

12       *Legal Standard for Ineffective Assistance of Counsel*

13       The test for demonstrating ineffective assistance of counsel is set forth in

14   <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

15   that, considering all the circumstances, counsel's performance fell below an objective standard of

16   reasonableness.  <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

17   identify the acts or omissions that are alleged not to have been the result of reasonable

18   professional judgment.  <u>Id</u>. at 690, 104 S. Ct. at 2066.  The federal court must then determine

19   whether in light of all the circumstances, the identified acts or omissions were outside the wide

20   range of professional competent assistance.  <u>Id</u>., 104 S. Ct. at 2066.  "We strongly presume that

21   counsel's conduct was within the wide range of reasonable assistance, and that he exercised

22   acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d

23   695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S. Ct. at 2065).

24       Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at

25   693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for

26   counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at

694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome."  Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated

based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference

to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's
> performance must be highly deferential" and that "every effort
> [must] be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time."
> 466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is
> presented with an ineffective-assistance claim not subject to §
> 2254(d)(1) deference, a [petitioner] must overcome the
> "presumption that, under the circumstances, the challenged action
> 'might be considered sound trial strategy.'" Ibid. (quoting Michel
> v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show
> that he would have satisfied Strickland's test if his claim were
> being analyzed in the first instance, because under § 2254(d)(1), it
> is not enough to convince a federal habeas court that, in its
> independent judgment, the state-court decision applied Strickland
> incorrectly.  See Williams, supra, at 411, 65 S. Ct. 363.[1]  Rather, he
> must show that the [ ]Court of Appeals applied Strickland to the
> facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

*Claim 2*

In claim two, petitioner argues that his trial counsel was ineffective for failing to

file a notice of appeal as he requested.  Petitioner argues that if trial counsel had filed the appeal

when he asked her to, his appeal would have been decided much sooner.  (How that would have

assisted petitioner given the known result is puzzling).

---

[1] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477, 65
S. Ct. 363 (1945).

1    The record indicates that counsel was appointed to represent petitioner on appeal.

2  See Respondent's Lodged Documents 1, 3, 5.  Appointed counsel filed an opening and reply

3  brief in the California Court of Appeal and a petition for review in the California Supreme Court.

4  Respondent's Lodged Documents 1, 3, 5.  Because counsel was appointed to represent petitioner

5  on appeal, his trial counsel had no obligation to file an appeal on his behalf.  This claim is

6  without merit.

7    Accordingly, for the reasons discussed above, after giving AEDPA deference, the

8  court denies this claim.

9    *Claim 3*

10    In claim three, petitioner argues that trial counsel was ineffective for failing to

11  argue that his enhancement pursuant to § 12022.53(b) not supported by sufficient evidence.  In

12  particular, petitioner argues that his trial counsel should have argued that there was no evidence

13  that he was a gang member.

14    Section 12022.53 provides, in relevant part,

15    (b) Notwithstanding any other provision of law, any person who, in the
     commission of a felony specified in subdivision (a), personally uses a firearm,
16   shall be punished by an additional and consecutive term of imprisonment in the
     state prison for 10 years. The firearm need not be operable or loaded for this
17   enhancement to apply.

18    (c) Notwithstanding any other provision of law, any person who, in the
     commission of a felony specified in subdivision (a), personally and intentionally
19   discharges a firearm, shall be punished by an additional and consecutive term of
     imprisonment in the state prison for 20 years.

20

21    (d) Notwithstanding any other provision of law, any person who, in the
     commission of a felony specified in subdivision (a), Section 246, or subdivision
22   (c) or (d) of Section 12034, personally and intentionally discharges a firearm and
     proximately causes great bodily injury, as defined in Section 12022.7, or death, to
23   any person other than an accomplice, shall be punished by an additional and
     consecutive term of imprisonment in the state prison for 25 years to life.

24    (e)(1) The enhancements provided in this section shall apply to any person who is
     a principal in the commission of an offense if both of the following are pled and
25   proved:

26    (A) The person violated subdivision (b) of Section 186.22.

1        (B) Any principal in the offense committed any act specified in subdivision (b),
(c), or (d).

2

3  Cal. Penal Code § 12022.53.

4        Cal. Penal Code § 186.22 makes participation in a street gang punishable.

5        Petitioner raised this claim in his habeas corpus petition filed in the Sacramento

6  County Superior Court.  The Superior Court denied this claim as follows:

7        Petitioner claims trial counsel should have argued there was insufficient evidence
he used a firearm, as defined in section 12022.53, subdivision (b).  Specifically,

8        he claims there was no evidence he was in a gang, as required by section
12022.53(e).  He again fails to provide any evidence showing counsel did not

9        make the proper argument.  Second, the provisions of section 12022.53,
subdivision (e), are not required for an enhancement under section 12022.53,

10       subdivision (b).  Again petitioner fails to show he is entitled to any relief.

11  Respondent's Lodged Document 8, p. 3.

12        Petitioner is under the mistaken impression that an enhancement pursuant to

13  subsection (b) of § 12022.53 requires proof of gang participation.  As stated by the Superior

14  Court, the provisions of § 12022.53(e), which do require proof of gang participation, are not

15  required for an enhancement under § 12022.53(b).  For this reason, petitioner's counsel was not

16  ineffective for failing to raise this argument.

17        Accordingly, for the reasons discussed above, after giving AEDPA deference, the

18  court denies this claim.

19        *Claim 4*

20        Petitioner argues that counsel provided an inadequate defense by failing to refute

21  the prosecutor's allegations that he "personally used" a firearm.  Petitioner argues that the

22  evidence demonstrated that he merely brandished the firearm.

23        As seen by the previous section dealing with the "brandishing vs. using" issue,

24  petitioner's argument is nearly frivolous.  In any event, as observed by respondent, during closing

25  argument counsel tried to persuade the jury that there was not sufficient evidence of the personal

26  use enhancement:

But you have to find that the person who used the bank displayed that firearm in a menacing manner. And I want to focus your attention on what the testimony was regarding this gun, because we have the testimony from Ms. Wallace and her testimony was pretty clear. She said that the gun was there, that she saw the gun and that the gun was on its side most of the time and that she never really felt it was directly pointed at her. She said she was standing behind the counter and the gun was there on its side. But contrary to what the District Attorney said in her opening statement that the gun was pointed in the face of the teller, that's actually not what happened. What you need to decide is whether or not you feel that this gun was used in a menacing manner that has been described or whether or not it was merely present and accounted for because she did say that she saw it.

The other testimony we have regarding the gun comes from Gabriel Cruz. He testified yesterday. And he also says, you know, he identified himself in a couple of pictures. And he said, yes, I saw the gun, it was down to the side. The person was never waiting it around. And that's how he described the use of the gun. Ladies and gentlemen, that is not what is intended in the language of that enhancements, personal use of a firearm displayed in a menacing manner. All right. It's just not. Merely being armed with a gun or having a gun present does not rise to the level of what is required for proof beyond a reasonable doubt regarding the conduct of that gun being displayed in a menacing manner, but that's something you have to decide.

RT at 540-541.

Counsel's argument to the jury that there was insufficient evidence to support the personal use enhancement, albeit futile, was not ineffective. Accordingly, for these reasons, after giving AEDPA deference, the court denies this claim.

*Claim 5*

Petitioner argues that his counsel was ineffective for failing to move to dismiss two of the firearm enhancements on grounds that they were "multiplicitous because all counts came from one isolated incident." Petitioner further argues that counsel should have moved to dismiss the enhancements pursuant to Cal. Penal Code § 12022.53(b) because as a gang enhancement, it resulted in a ten year sentence, whereas the other "non-gang" enhancements only provided for 4 year sentences. Petitioner argues that had the gang enhancement been dismissed, he would have received a shorter sentence.

Respondent argues that these claims are procedurally barred because petitioner failed to raise these claims on appeal. In the order denying his state habeas petition, the Superior

1    Court found that petitioner's claims alleging that the duplicative enhancements should have been

2    dismissed and insufficient evidence supported the firearm enhancements were barred based on

3    his failure to raise these claims on direct appeal.  Respondent's Lodged Document 8, p. 2.  The

4    claims raised in claim 5 of the instant petition are that counsel was ineffective for failing to raise

5    these claims.  The Superior Court did not find that these ineffective assistance of counsel claims

6    should have been raised on direct appeal.  Accordingly, respondent's argument that these claims

7    are procedurally barred is without merit.

8             Turning to the merits of these claims, at the outset the court observes that prior to

9    sentencing petitioner's counsel filed a motion to dismiss counts two and three because all three

10   counts arose from a single act.  CT at 260-264.  Counsel argued that the court had discretion to

11   dismiss the counts if it furthered the interest of justice.  Id.  Counsel also argued that the court

12   should dismiss two counts because it may not be clear to a court reviewing the case in the future

13   that the counts arose from a single incident and should not be used as multiple strikes.  Id.  The

14   court denied this motion.  RT at 603.

15            Petitioner now appears to argue that counsel should have moved to dismiss the

16   enhancements on the same grounds she moved to dismiss the convictions for counts two and

17   three.  First, if the conviction would have been dismissed, the enhancements would have been

18   similarly dismissed by operation of law because there would have been nothing left to enhance.

19   Moreover, even assuming the undersigned has missed something because the court chose not to

20   exercise its discretion to dismiss counts two and three, it is very unlikely that it would have

21   exercised its discretion to dismiss the enhancements.

22            Liberally construing the petition, petitioner may be arguing that counsel should

23   have argued that his conviction for the three enhancements violated the Double Jeopardy clause.

24            The Double Jeopardy Clause provides that no person shall be "subject for the

25   same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. This protection

26   is made applicable to the states through the Fourteenth Amendment.  See Benton v. Maryland,

395 U.S. 784, 794, 89 S.Ct. 2056 (1969).  In practical terms, the Double Jeopardy Clause "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense."  United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079 (1976).  When multiple sentences are imposed in the same trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."  Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225 (1977); accord United States v. Davenport, 519 F.3d 940, 943 (9th Cir. 2008).

"When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other."  Davenport, 519 F.3d at 943 (citing Rutledge v. United States, 517 U.S. 292, 297, 116 S.Ct. 1241, 1245 (1996).  Courts determine "whether a defendant has been punished twice for the same offense by applying the rule set forth in" Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180 (1932).  Rutledge, 517 U.S. at 297, 116 S.Ct. at 1245 (internal quotation marks omitted).  If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.  Generally, two different statutes are determined to define the same offense where one is a lesser included offense of the other.  Id.  "If two different criminal statutory provisions indeed punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent."  Davenport, 519 F.3d at 943 (citing Missouri v. Hunter, 459 U.S. 359, 366-67, 103 S.Ct. 673, 678 (1983).

As discussed above, petitioner's conviction for the robbery was enhanced pursuant to Cal. Penal Code § 1022.53(b) after the jury found that he used a firearm during commission of the robbery.  His conviction for burglary was enhanced pursuant to Cal. Penal

13

1   Code § 12022.5 after the jury found that he used a firearm during commission of the burglary.

2   His conviction for assault was enhanced pursuant to Cal. Penal Code § 12022.5 after the jury

3   found that he used a firearm during commission of the assault.  Each enhancement required proof

4   of a different underlying offense, i.e. burglary, robbery and assault.  Therefore, because each

5   enhancement required proof of a fact that the others did not, no double jeopardy violation

6   occurred.  Therefore, counsel was not ineffective for failing to move to dismiss the enhancements

7   on this ground.

8          Petitioner may be arguing that counsel should have moved to dismiss two of his

9   enhancements under state law.  As discussed above, sentencing on two of his convictions was

10  stayed pursuant to Cal. Penal Code § 654, which prohibits multiple punishment for the same act.

11  People v. Reeves, 91 Cal.App.4th 14, 55-56, 109 Cal.Rptr.2d 728 (2001).  There were no

12  colorable state law grounds on which to otherwise move to dismiss the enhancements.  Because

13  petitioner was sentenced in accordance with California law, a motion to dismiss two of the

14  enhancements based on a violation of Cal. Penal Code § 654 would have been denied.

15         Finally, petitioner argues that counsel should have moved to dismiss the "gang,"

16  i.e. use enhancement because the sentence for that enhancement was longer than the other two

17  enhancements.  However, counsel had no colorable legal grounds on which to move to dismiss

18  the other enhancements.  To the extent petitioner is arguing that counsel should have moved for

19  him to be sentenced under the shorter enhancements, this claim is without merit.

20         Petitioner was sentenced to 13 years, i.e. 3 years for robbery plus the 10 year

21  enhancement.  Petitioner was sentenced to 6 years, i.e. 2 years for burglary and 4 years for the

22  enhancement, for count 2.  Petitioner was sentenced to 7 years, i.e. 3 years for assault and 4 years

23  for the enhancement, for count 3.  The sentences for counts 2 and 3 were stayed pursuant to Cal.

24  Penal Code 654 which provides, in relevant part,

25         An act or omission that is punishable in different ways by different provisions of
           law shall be punished under the provision that provides for the longest potential
26         term of imprisonment, but in no case shall the act or omission be punished under

1           more than one provision.  An acquittal or conviction and sentence under any one

2           bars a prosecution for the same act or omission under any other.

3                     Pursuant to § 654, the court was required to sentence petitioner to the count that

4 had the longest term of imprisonment, i.e. count 1.  For that reason, counsel was not ineffective

5 for failing to move for petitioner to be sentenced under one of the other enhancements.

6                     Accordingly, for these reasons, after giving AEDPA deference, the court denies

7 this claim.

8                  *Claim 6*

9                     Claim 6 is a restatement of the ineffective assistance of counsel claims discussed

10 above.  Accordingly, no further discussion of this claim is warranted.

11                  C.  <u>Claim 7</u>

12                     In claim 7, petitioner alleges that there was insufficient evidence to support his

13 convictions for the weapons use enhancements.  Respondent first argues that this claim is

14 unexhausted.

15                     The exhaustion of state court remedies is a prerequisite to the granting of a

16 petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must

17 be waived explicitly by respondent's counsel.  28 U.S.C. § 2254(b)(3).  A waiver of exhaustion,

18 thus, may not be implied or inferred.  A petitioner satisfies the exhaustion requirement by

19 providing the highest state court with a full and fair opportunity to consider all claims before

20 presenting them to the federal court.  <u>Picard v. Connor</u>, 404 U.S. 270, 276,  92 S. Ct. 509, 512

21 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir.), <u>cert.</u> <u>denied</u>, 478 U.S. 1021 (1986).

22                     After reviewing the petition for review and habeas corpus petition filed in the

23 California Supreme Court, the court finds that petitioner failed to present this claim to the

24 California Supreme Court.  Respondent's Lodged Documents 5, 13.  However, because this

25 claim is without merit, the court will considers its merits notwithstanding the failure to exhaust.

26 28 U.S.C. § 2254(b)(2).

1         When a challenge is brought alleging insufficient evidence, federal habeas corpus

2    relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

3    most favorable to the prosecution, no rational trier of fact could have found "the essential

4    elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

5    319, 99 S. Ct. 2781, 2789 (1979).  Under Jackson, the court reviews the entire record when the

6    sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.

7    11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483

8    U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the

9    evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S.

10   Ct. at 2789.  "The question is not whether we are personally convinced beyond a reasonable

11   doubt.  It is whether rational jurors could have reached the same conclusion that these jurors

12   reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

13        If the trier of fact could draw conflicting inferences from the evidence, the court in

14   its review will assign the inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465,

15   469 (9th Cir. 1994).  The fact that petitioner can construct from the evidence alternative scenarios

16   at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable

17   trier of fact could have found the conviction scenario beyond a reasonable doubt.

18        In reviewing the sufficiency of the evidence supporting a
conviction, we search the record to determine "whether a

19   reasonable jury, after viewing the evidence in the light most
favorable to the government, could have found the defendants

20   guilty beyond a reasonable doubt of each essential element of the
crime charged." United States v. Douglass, 780 F.2d 1472, 1476

21   (9th Cir.1986).  *The relevant inquiry is not whether the evidence
excludes every hypothesis except guilt, but whether the jury could*

22   *reasonably arrive at its verdict.* United States v. Fleishman, 684
F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct.

23   464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d
1337, 1343 (9th Cir.1981), overruled on other grounds, United

24   States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).
United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)

25   (emphasis added).

26   U.S. v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

1       Superimposed on these already stringent insufficiency standards is the AEDPA

2  requirement that even if a federal court were to initially find on its own that no reasonable jury

3  should have arrived at its conclusion, the federal court must also determine that the state

4  appellate court not have affirmed the verdict under the Jackson standard in the absence of an

5  unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

6       As set forth above, in its rejection of petitioner's jury instruction error claim, the

7  California Court of Appeal found that there was sufficient evidence to support petitioner's

8  convictions for the weapons enhancements.  The California Court of Appeal found that "[h]ere,

9  there was no reasonable explanation for defendant's conduct other than a desire to facilitate the

10 crimes.  He removed the gun from his pocket as he approached the teller, placed it on the

11 counter, and, while continuing to hold on to the gun, asked the teller for money. The most

12 obvious explanation, indeed the only apparent one, was a deliberate display, intended to convey

13 menace, for the purpose of advancing the commission of the offenses."  Respondent's Lodged

14 Document 4, p. 6.  Based on the reasoning of the California Court of Appeal, the court finds that

15 there was sufficient evidence to support petitioner's convictions for the weapons use

16 enhancements.

17      Accordingly, for these reasons, after giving AEDPA deference, the court denies

18 this claim.

19      D.  Claims 8-13

20      In claims 8-13 petitioner alleged ineffective assistance of appellate counsel.  A

21 claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is

22 applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000).

23      In claim 8, petitioner alleges that his appellate counsel was ineffective for arguing

24 that there was insufficient evidence to support his convictions for the weapons use

25 enhancements.  As discussed above, on direct appeal the California Court of Appeal, in essence,

26 found sufficient evidence to support the weapons use enhancements.  Had appellate counsel

1   raised this claim on appeal, it would have been denied.  Accordingly, appellate counsel was not

2   ineffective for failing to raise this claim.

3          In claim 9, petitioner alleges that appellate counsel failed to argue that two of the

4   three enhancements should have been dismissed because they were "multipliticous."  For the

5   reasons the court finds that trial counsel was not ineffective for challenging the enhancements on

6   grounds that they were "multipliticous," the court finds that appellate counsel was not ineffective

7   for failing to raise this claim.

8          In claim 10, petitioner argues that appellate counsel was ineffective for failing to

9   argue that trial counsel was ineffective for failing to file a notice of appeal.  In claim 11,

10  petitioner argues that appellate counsel was ineffective for failing to argue that trial counsel was

11  ineffective for failing to "elucidate the difference between brandishing a firearm as compared to

12  the states allegation of 'personal use' of firearm."   In claim 12, petitioner argues that appellate

13  counsel was ineffective for failing to argue that trial counsel was ineffective for failing to

14  challenge the gang enhancement.

15         Under California law, claims of ineffective assistance of counsel should be raised

16  on habeas corpus, not on direct appeal.  People v. Lopez, 42 Cal.4th 960, 972 (2008).  For this

17  reason, the court does not find that appellate counsel was ineffective for failing to raise the

18  ineffective assistance of trial counsel claims set forth above.  In any event, trial counsel was not

19  ineffective on the grounds alleged in claims 10-12 for the reasons discussed above.  See People

20  v. Bolin, 18 Cal.4th 297, 333 Cal.Rptr.2d 412 (1998) (applying Strickland v. Washington, supra).

21  Accordingly, had appellate counsel raised these claims, they would have been denied on their

22  merits.

23         In claim 13, petitioner argues that appellate counsel was ineffective for failing to

24  raise the claims discussed in claims 8-12 above.  For that reason, no further discussion of claim

25  13 is required.

26  \\\\\

18

1          Accordingly, for these reasons, after giving AEDPA deference, the court orders

2   claims 8-13 denied.

3          For the reasons discussed above, IT IS HEREBY ORDERED that petitioner's

4   application for a writ of habeas corpus is denied.

5   DATED: 02/24/09

6                                   /s/ Gregory G. Hollows

7                                 UNITED STATES MAGISTRATE JUDGE

8
    bough.ord

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26